IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-66

 No. 261A20

 Filed 11 June 2021

 STATE OF NORTH CAROLINA
 v.
 CHARLES BLAGG

 Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of

 the Court of Appeals, 271 N.C. App. 276 (2020), finding no error in a judgment entered

 on 29 January 2018 by Judge Gary M. Gavenus in Superior Court, Buncombe County.

 Heard in the Supreme Court on 22 March 2021.

 Joshua H. Stein, Attorney General, by Nicholas R. Sanders, Assistant Attorney
 General, for the State-appellee.

 Sean P. Vitrano for defendant-appellant.

 MORGAN, Justice.

¶1 In this appeal, we consider whether the trial court erred in denying defendant’s

 motion to dismiss a charge of possession with intent to sell or deliver

 methamphetamine. In the trial court as well as in the Court of Appeals, defendant

 argued that the evidence presented by the State, while sufficient to support a charge

 of possession of methamphetamine, was insufficient to send to the jury the greater

 charge of possession with intent to sell or deliver methamphetamine. The majority of

 the Court of Appeals disagreed with defendant’s position and found no error in his
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 trial and conviction. Viewing the evidence adduced at trial in the light most favorable

 to the State and considering the totality of the circumstances presented in this case,

 we hold that the evidence here was sufficient to withstand defendant’s motion to

 dismiss the greater charge and to permit the jury to resolve the question of whether

 the State met its burden to prove beyond a reasonable doubt that defendant possessed

 methamphetamine with the intent to sell or deliver. Accordingly, we affirm the

 majority decision of the lower appellate court.

 I. Factual Background and Procedural History

¶2 According to evidence presented at trial in this case, on the evening of 4

 January 2017, Darrell Maxwell, a detective with the Buncombe County Sheriff’s

 Office, joined two other deputies in the surveillance of a residence in Weaverville that

 had been the subject of complaints of illegal drug activity. Maxwell observed a vehicle

 arrive at the residence and park in the driveway. The detective then saw a man exit

 the vehicle and enter the surveilled home. Due to the encroaching darkness of the

 evening, Maxwell did not see the individual leave the residence, but after about ten

 minutes, Maxwell saw the lights of the vehicle illuminate as it departed from the

 driveway. Maxwell followed the vehicle in his unmarked patrol car, and after

 witnessing the vehicle cross the double yellow center line on a portion of the road

 described by the detective as a “blind curve,” Maxwell initiated a traffic stop by

 activating his patrol car’s blue lights. Defendant, who was identified by Maxwell as
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 the operator of the vehicle he stopped, acknowledged having crossed the double yellow

 center line when Maxwell explained to defendant the reason for the traffic stop.

 Maxwell obtained defendant’s driver’s license, performed a records check, and then

 asked defendant to exit defendant’s vehicle so that Maxwell could perform a pat-down

 of defendant’s person. Defendant consented to the pat-down, during which Maxwell

 discovered a pocketknife.

¶3 By this point in the traffic stop, Deputy Jake Lambert, a K-9 handler with the

 Buncombe County Sheriff’s Office, had arrived on the scene to assist. Maxwell asked

 defendant whether defendant had any contraband in his vehicle,1 and Maxwell

 specifically named several controlled substances, including methamphetamine and

 marijuana. Defendant denied the presence of any such illegal drugs. When Maxwell

 asked defendant if Maxwell could search defendant’s vehicle, defendant replied, “not

 without a warrant.” Maxwell asked Lambert to employ the K-9 to conduct an open-

 air sniff of defendant’s vehicle, while Maxwell issued defendant a warning citation

 for the traffic infraction. Lambert’s K-9 alerted to defendant’s vehicle in a manner

 which was consistent with the detection of the presence of controlled substances.

 Lambert consequently began to conduct a search of the vehicle and discovered a bag

 of what appeared to be methamphetamine in the center console of the vehicle. After

 1 The vehicle, a Ford Focus sedan, was registered to defendant’s mother. For ease of

 reading, we shall refer to the vehicle as “defendant’s vehicle.”
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 handcuffing defendant and placing him under arrest, Maxwell collected all of the

 apparent drug-related items found in defendant’s vehicle, including one large bag and

 several smaller bags of a white crystalline substance; a bag of a leafy green substance

 which Maxwell believed to be marijuana; a baggie of cotton balls; several syringes;

 rolling papers; and a lockbox or “camo safe”2 containing, inter alia, several smoked

 marijuana blunts and a number of plastic baggies. Upon defendant’s arrest, Maxwell

 informed defendant of his Miranda rights. Defendant then offered to provide

 information about “Haywood[ County]’s most wanted,” a woman whom defendant

 claimed was involved in heroin trafficking and whom defendant represented that he

 was supposed to meet.

¶4 On 10 July 2017, defendant was indicted on charges of possession of

 methamphetamine, possession with intent to sell or deliver methamphetamine,

 possession of marijuana, possession of marijuana paraphernalia, and the attainment

 of habitual felon status. Defendant’s case came on for trial during the 9 January 2018

 Criminal Session of Superior Court, Buncombe County, Judge Gary M. Gavenus

 presiding. Defendant failed to appear when his case was called for trial, and as a

 result, his jury trial was conducted in absentia.

¶5 At trial, the State offered evidence from three witnesses: Maxwell, Lambert,

 and Deborah Chancey, a forensic analyst with the State Crime Lab. With regard to

 2 “Camo” is a shortened term for the word “camouflage.”
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 the charge of possession with intent to sell or deliver methamphetamine, Chancey

 rendered expert testimony at trial that the white crystalline substance in the large

 plastic baggie was methamphetamine and that its weight was 6.51 grams. Maxwell

 testified that he had five years of law enforcement experience which was specifically

 focused on drug investigations. He further testified that a typical methamphetamine

 sale for personal drug use was usually between one-half of a gram to a gram, such

 that the tested amount of methamphetamine recovered from defendant’s vehicle was

 somewhere between six and thirteen times the typical single use quantity. Maxwell

 also testified that he and Lambert had weighed two of the smaller baggies of the

 white crystalline substance on the date of defendant’s arrest and measured the

 weights of those respective quantities—bags included—at 0.6 and 0.9 grams. The

 total weight of the methamphetamine and the untested crystalline substances

 recovered from defendant’s vehicle was over 8 grams.

¶6 During his trial testimony, Maxwell opined that the baggies recovered from

 defendant’s vehicle were consistent with those employed in drug sales. He and

 Lambert both acknowledged at trial that they did not recover cash from defendant’s

 person or from defendant’s vehicle, nor any cutting agents, scales, or business ledgers

 during the search of the vehicle. Both law enforcement officers also acknowledged

 that there was no evidence which they discovered during the vehicle search that

 would indicate that defendant was a high-level actor in the drug trade. With the
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 admission into evidence of the lockbox or “camo safe” and its contents, which included

 an unspecified number of plastic baggies consistent with the illegal sale of controlled

 substances, the jury was able to observe and to consider the number of plastic baggies

 as well as the other items which were recovered from defendant’s vehicle. At the close

 of the State’s evidence, defendant moved to dismiss the possession with intent to sell

 or deliver methamphetamine charge because the search of his person and his vehicle

 yielded “no cash, no guns, no evidence of a hand to hand transaction[,] . . . [n]o books,

 notes, ledgers, money orders, financial records, documents, . . . [and n]othing

 indicating that [defendant] is a dealer as opposed to a possessor or user[.]” Defendant

 also moved to dismiss the possession of marijuana paraphernalia charge and the

 charge of maintaining a vehicle. The trial court granted defendant’s motion to dismiss

 the possession of marijuana paraphernalia charge but denied defendant’s motion to

 dismiss the charge of possession with intent to sell or deliver methamphetamine.

 Defendant did not present any evidence and renewed his motion to dismiss the

 possession with intent to sell or deliver methamphetamine charge. The trial court

 again denied the motion.

¶7 On 11 January 2018, the jury returned verdicts of guilty on the charges of

 possession of methamphetamine, possession with intent to sell or deliver

 methamphetamine, possession of marijuana, and having attained habitual felon

 status. The trial court sentenced defendant on 29 January 2018 to concurrent
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 sentences of 128 to 166 months and 50 to 72 months in prison. Defendant gave notice

 of appeal in open court.

¶8 Before the Court of Appeals, defendant argued that the State did not prove

 that he had the intent to sell or deliver methamphetamine. The panel of the lower

 appellate court was divided on this question, with the majority rejecting defendant’s

 position. State v. Blagg, 271 N.C. App. 276, 277 (2020). In reaching this result, the

 Court of Appeals majority considered the various circumstances relevant to

 defendant’s intent and noted that defendant

 had more than six times, and up to 13 times, the amount of
 methamphetamine typically purchased. While it is possible
 that [d]efendant had 13 hits of methamphetamine solely
 for personal use, it is also possible that [d]efendant
 possessed that quantity of methamphetamine with the
 intent to sell or deliver the same. This issue is properly
 resolved by the jury.

 Moreover, the evidence also tended to show that
 [d]efendant had just left a residence that had been under
 surveillance multiple times for drug-related complaints.
 Defendant also admitted that he had plans to visit an
 individual charged with trafficking drugs. While
 [d]efendant’s actions may be wholly consistent with an
 individual obtaining drugs for personal use, the jury could
 also reasonably infer that he had the intent to sell or
 deliver methamphetamine because of the quantity of
 drugs, the other circumstantial evidence, and his
 admission.

 . . . . The baggies in [d]efendant’s possession are
 paraphernalia or equipment used in methamphetamine
 transactions. . . .
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 ....

 . . . . Standing alone, possession of the baggies may be
 innocent behavior. However, when viewed as a whole and
 in the light most favorable to the State, the jury could
 reasonably infer that baggies in [d]efendant’s possession
 were used for the packaging and distribution of
 methamphetamine.

 The question here is not whether evidence that does
 not exist entitles [d]efendant to a favorable ruling on his
 motion to dismiss. That there may be evidence in a typical
 drug transaction that is non-existent in another case is not
 dispositive on the issue of intent. Instead, the question is
 whether the totality of the circumstances, based on the
 competent and incompetent evidence presented, when
 viewed in the light most favorable to the State, permits a
 reasonable inference that [d]efendant possessed
 methamphetamine with the intent to sell or deliver.

 In this type of case, where reasonable minds can
 differ, the weight of the evidence is more appropriately
 decided by a jury. Accordingly, the trial court did not err in
 denying the [d]efendant’s motion to dismiss and
 submitting the case to the jury.

 Id. at 281–82 (citations omitted).

¶9 The dissenting judge in the Court of Appeals disagreed, summarizing an

 opposing view that “the record evidence in this case shows nothing more than ‘the

 normal or general conduct of people’ who use methamphetamine; thus, the evidence,

 at most, ‘raises only a suspicion . . . that [d]efendant had the necessary intent to sell

 and deliver’ methamphetamine.” Id. at 283 (McGee, C.J., dissenting) (first alteration

 in original) (quoting State v. Turner, 168 N.C. App. 152, 158–59 (2005)). On 4 June
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 2020, defendant filed a notice of appeal in this Court based upon the Court of Appeals

 dissenting opinion pursuant to N.C.G.S. § 7A-30(2) and N.C. R. App. P. 14(b)(1).

 II. Appellate Standards of Review

¶ 10 We review decisions of the Court of Appeals for errors of law. State v. Melton,

 371 N.C. 750, 756 (2018).

 In ruling on a motion to dismiss, the trial court need
 determine only whether there is substantial evidence of
 each essential element of the crime and that the defendant
 is the perpetrator. Substantial evidence is the amount
 necessary to persuade a rational juror to accept a
 conclusion. In evaluating the sufficiency of the evidence to
 support a criminal conviction, the evidence must be
 considered in the light most favorable to the State; the
 State is entitled to every reasonable intendment and every
 reasonable inference to be drawn therefrom. In other
 words, if the record developed at trial contains substantial
 evidence, whether direct or circumstantial, or a
 combination, to support a finding that the offense charged
 has been committed and that the defendant committed it,
 the case is for the jury and the motion to dismiss should be
 denied. Whether the State presented substantial evidence
 of each essential element of the offense is a question of law;
 therefore, we review the denial of a motion to dismiss de
 novo.

 State v. Golder, 374 N.C. 238, 249–50 (2020) (citations and extraneity omitted).

¶ 11 This Court has long acknowledged that

 [i]t is sometimes difficult to distinguish between evidence
 sufficient to carry a case to the jury, and a mere scintilla,
 which only raises a suspicion or possibility of the fact in
 issue. The general rule is that, if there be any evidence
 tending to prove the fact in issue, or which reasonably
 conduces to its conclusion as a fairly logical and legitimate
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 deduction, and not merely such as raises a suspicion or
 conjecture in regard to it, the case should be submitted to
 the jury.

 State v. Earnhardt, 307 N.C. 62, 66 (1982) (emphasis added; extraneity omitted)

 (quoting State v. Johnson, 199 N.C. 429, 431 (1930)). Because “[e]vidence in the record

 supporting a contrary inference is not determinative on a motion to dismiss,” State v.

 Scott, 356 N.C. 591, 598 (2002) (citing State v. Fritsch, 351 N.C. 373, 382 (2000)),

 “[c]ircumstantial evidence may withstand a motion to dismiss and support a

 conviction even when the evidence does not rule out every hypothesis of innocence,”

 State v. Stone, 323 N.C. 447, 452 (1988) (emphasis added); see also State v. Butler,

 356 N.C. 141, 145 (2002) (“To be substantial, the evidence need not be irrefutable or

 uncontroverted; it need only be such as would satisfy a reasonable mind as being

 ‘adequate to support a conclusion.’ ” (quoting State v. Lucas, 353 N.C. 568, 581

 (2001))); State v. Miller, 363 N.C. 96, 99 (2009) (holding that “so long as the evidence

 supports a reasonable inference of the defendant’s guilt, a motion to dismiss is

 properly denied even though the evidence also ‘permits a reasonable inference of the

 defendant’s innocence.’ ” (quoting Butler, 356 N.C. at 145)). Courts considering a

 motion to dismiss for insufficiency of the evidence “should not be concerned with the

 weight of the evidence.” Earnhardt, 307 N.C. at 67.

¶ 12 “Once the court decides that a reasonable inference of defendant’s guilt may be

 drawn from the circumstances, then it is for the jury to decide whether the facts,
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 taken singly or in combination, satisfy it beyond a reasonable doubt that the

 defendant is actually guilty.” Fritsch, 351 N.C. at 379 (citations and extraneity

 omitted). “In borderline or close cases, our courts have consistently expressed a

 preference for submitting issues to the jury.” State v. Yisrael, 255 N.C. App. 184, 193

 (2017), aff’d per curiam, 371 N.C. 108 (2018).

 III. Analysis

¶ 13 Defendant argues that the trial court erred in denying his motion to dismiss

 the charge of possession with intent to sell or deliver methamphetamine. He asserts

 that the Court of Appeals majority erred in failing to reverse the trial court outcome

 and to vacate his conviction for this offense. Specifically, defendant contends that the

 evidence introduced at trial was not sufficient to permit the charge to be submitted

 to the jury for consideration because the evidence was inadequate to permit the jury

 to reasonably infer that defendant possessed the methamphetamine discovered

 during the traffic stop with the intent to sell or deliver it. Defendant submits, and the

 dissent of the lower appellate court opines, that the evidence only supports the

 submission to the jury of the charged crime of possession of methamphetamine

 instead of the heightened indicted offense. We disagree.

¶ 14 Subsection 90-95(a)(1) of the General Statutes of North Carolina provides that

 it is unlawful for any person to “possess with intent to manufacture, sell or deliver, a

 controlled substance.” N.C.G.S. § 90-95(a)(1) (2019). Methamphetamine is a
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 controlled substance. N.C.G.S. § 90-90 (2019). In order to prove that a defendant has

 committed the offense of possession with intent to sell or deliver a controlled

 substance such as methamphetamine, the State must present evidence of the

 defendant’s (1) possession; (2) of a controlled substance; (3) with intent to sell or

 deliver the controlled substance. Yisrael, 255 N.C. App. at 187–88. Only the third of

 these elements—intent to sell or deliver the controlled substance

 methamphetamine—is at issue in this appeal.

¶ 15 We agree with the Court of Appeals that “in ruling upon the sufficiency of

 evidence in cases involving the charge of possession with intent to sell or deliver, . . .

 our case law demonstrates that this is a fact-specific inquiry in which the totality of

 the circumstances in each case must be considered unless the quantity of drugs found

 is so substantial that this factor—by itself—supports an inference of possession with

 intent to sell or deliver.” State v. Coley, 257 N.C. App. 780, 788–89 (2018). In cases

 which focus on the sufficiency of the evidence of a defendant’s intent to sell or deliver

 a controlled substance, direct evidence may be used to prove intent, but appellate

 courts must often consider circumstantial evidence from which the defendant’s intent

 may be inferred. Id. at 786. Such an inference can arise from various relevant factual

 circumstances, including “(1) the packaging, labeling, and storage of the controlled

 substance, (2) the defendant’s activities, (3) the quantity [of the controlled substance]

 found, and (4) the presence of cash or drug paraphernalia.” Id. (quoting State v.
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 Nettles, 170 N.C. App. 100, 106, disc. review denied, 359 N.C. 640 (2005)). An example

 of drug paraphernalia which appellate courts such as ours have considered in

 determining intent to sell or deliver controlled substances is the presence of

 packaging materials, such as plastic baggies, which may be used to package

 individual doses of a controlled substance. State v. Williams, 307 N.C. 452, 457 (1983).

¶ 16 In establishing defendant’s intent to sell or deliver in the present case, the

 State introduced evidence of the manner in which the methamphetamine was

 packaged, the manner in which the methamphetamine was stored, defendant’s

 activities, the quantity of methamphetamine found, and the presence of drug

 paraphernalia. This combination of direct and circumstantial evidence satisfies the

 factors first articulated in Nettles which we hereby adopt to review a trial court’s

 assessment of the sufficiency of the evidence to show a defendant’s intent to sell or

 deliver a controlled substance, while meeting the standard of the existence of

 substantial evidence to compel the trial court’s denial of defendant’s motion to dismiss

 the charge of possession with intent to sell or deliver methamphetamine. In applying

 the long-established legal principles that the evidence must be considered in the light

 most favorable to the State upon a defendant’s motion to dismiss a criminal charge,

 that the State is entitled to every reasonable inference from the evidence in the face

 of a defendant’s motion to dismiss, and that evidence which supports a contrary

 inference is not determinative on a motion to dismiss, we determine that the trial
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 court properly and correctly denied defendant’s motion to dismiss the charge of

 possession with intent to sell or deliver methamphetamine.

¶ 17 In illustration of our determination, we now apply these factors to the evidence

 presented at trial.

 A. Packaging of the Methamphetamine

¶ 18 In his search of defendant’s vehicle, Maxwell found one large bag and several

 smaller bags of a white crystalline substance. The laboratory analysis conducted upon

 the contents of the large bag showed that the substance was 6.51 grams of

 methamphetamine. While two of the smaller bags which contained the untested

 white crystalline substance were found by Maxwell and a fellow law enforcement

 officer, Lambert, to weigh a total of 1.5 grams, there was also an additional

 unspecified number of clear plastic baggies which Maxwell testified were consistent

 with the type which are used in the sale of packaged illegal controlled substances.

 Maxwell also testified that “[u]sually a seller will individually package the substance.

 Usually in anywhere from half a gram to one gram, depending on what the buyer is

 wanting. On occasion, they will weigh out and re-package it, and sell whatever the

 buyer is seeking.”

¶ 19 In considering the evidence in the light most favorable to the State upon

 defendant’s motion to dismiss the charge of possession with intent to sell or deliver

 methamphetamine, the matter of the original packaging of the verified
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 methamphetamine and the untested white crystalline substance discovered in

 defendant’s vehicle, coupled with the presence of available additional packaging in

 the form of an undetermined number of clear plastic baggies which were deemed to

 be consistent with the sale of packaged illegal controlled substances, tends to support

 an inference that defendant intended to sell or deliver methamphetamine. Such

 packaging materials can be considered a relevant circumstance in determining intent

 to sell or deliver a controlled substance. Williams, 307 N.C. at 457.

 B. Storage of the Methamphetamine

¶ 20 The methamphetamine was found in the center console of defendant’s vehicle,

 according to trial testimony regarding the joint participation of Maxwell, Lambert,

 and the drug-sniffing K-9 in the search of the vehicle. Upon the admission of evidence

 during the presentation of the State’s case that defendant had just left a residence

 which was under surveillance by law enforcement officers due to complaints of illegal

 drug activity at the home, that defendant had a pending meeting with someone whom

 he identified as a drug trafficker, along with other evidentiary aspects pertaining to

 the storage of the controlled substance in light of the totality of the circumstances,

 the trial court appropriately considered these facts in evaluating the sufficiency of

 the evidence to show that defendant had the required intent to sell or deliver

 methamphetamine.
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 C. Defendant’s Activities

¶ 21 The activities of defendant contributed to the existence of substantial evidence

 which, in turn, amounted to a sufficient quantity of evidence to authorize the trial

 court’s submission to the jury of defendant’s charge of possession with intent to sell

 or deliver methamphetamine. Such activities included defendant’s aforementioned

 endeavors of driving a vehicle to a residence which was under the surveillance of law

 enforcement officers for suspected illegal drug activity, entering the home and

 remaining inside its premises for a period of approximately ten minutes, committing

 to meet with someone whom he identified as an individual who was involved in illegal

 drug trafficking, and operating a vehicle which contained a large bag of a verified

 controlled substance and a host of items which could be readily associated with it.

 D. Quantity of Methamphetamine Found

¶ 22 The evidence at trial showed that a total of more than 8 grams of a white

 crystalline substance was recovered from defendant’s vehicle pursuant to the search

 of the car by law enforcement officers. Of this total, 6.51 grams was subjected to

 laboratory analysis and was identified as methamphetamine; the remaining quantity

 of the substance was not tested. As previously noted, during his trial testimony

 Maxwell stated that he observed, based on his training and experience, that a seller

 of methamphetamine will typically package the substance in a quantity ranging from

 one-half of a gram to a gram. Maxwell also testified that the unspecified number of
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 clear plastic baggies which were found in defendant’s vehicle during the search was

 consistent with his experience “as to the dealing and transportation of

 methamphetamine.”

¶ 23 We have previously acknowledged the arithmetic computation of the Court of

 Appeals majority in the decision which it rendered in this case that defendant “had

 more than six times, and up to 13 times, the amount of methamphetamine typically

 purchased,” such that “[w]hile it is possible that [d]efendant had 13 hits of

 methamphetamine solely for personal use, it is also possible that [d]efendant

 possessed that quantity of methamphetamine with the intent to sell or deliver the

 same.” Blagg, 271 N.C. App. at 281. Meanwhile, N.C.G.S. § 90-95(h)(3b) establishes

 that the minimum quantity of methamphetamine for trafficking in the controlled

 substance is 28 grams; the quantity of 6.51 grams of methamphetamine which was

 verified as existent and in the possession of defendant in the instant case is 23.3% of

 the threshold amount of trafficking in methamphetamine. In sum, the amount of

 methamphetamine at issue here is greater than the amount of the substance that the

 trial evidence associates with possession for one’s personal use, yet lesser than the

 amount of the substance that the statutory law associates with trafficking for wider

 use.

¶ 24 The State is not required to disprove the possibility that the

 methamphetamine in defendant’s possession was solely for personal use in order to
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 survive defendant’s motion to dismiss. See Fritsch, 351 N.C. at 379 (holding that in

 order to survive a motion to dismiss the evidence need not “rule out every hypothesis

 of innocence” (quoting State v. Stone, 323 N.C. 447, 452 (1988))). The jury was eligible

 to draw the permissible inference from this amount of methamphetamine, in

 combination with the totality of the circumstances, that defendant had the intent to

 sell or deliver methamphetamine. See, e.g., State v. McNeil, 165 N.C. App. 777, 783

 (2004) (upholding the denial of a motion to dismiss a charge of possession with intent

 to sell or deliver where the controlled substance—cocaine—was 19.64% of the

 minimum amount to sustain a trafficking charge and additional circumstances

 included its packaging in twenty-two individually wrapped pieces placed in the corner

 of a paper bag), aff’d, 359 N.C. 800 (2005).

¶ 25 Since the quantity of the methamphetamine found in defendant’s possession

 was not dispositive of the issue concerning its presence for his personal use or its

 presence for his ability to sell or deliver the methamphetamine, we find that the trial

 court’s adherence to the principle espoused in Yisrael to submit issues to the jury in

 borderline or close cases to be both prudent and proper.

 E. Presence of Cash or Drug Paraphernalia

¶ 26 There was no currency which was recovered from defendant or from his vehicle

 as a result of the search. Likewise, items such as guns, cutting agents, scales,

 business ledgers, books, notes, money orders, financial records, documents, and
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 suspicious cellular telephone entries which are often associated with dealers of illegal

 drugs were not found by law enforcement officers in the course of the search.

 However, other items such as a “loaded” syringe, a bag of new syringes, a baggie of

 cotton balls, and other items were discovered during the search. The search also

 uncovered a lockbox or “camo safe” which was clandestinely kept in the back

 floorboard of defendant’s vehicle and contained numerous clear plastic baggies

 similar to those that were found in the vehicle’s center console; a variety of other

 items were also maintained in the container.

¶ 27 Just as any list of circumstances frequently considered on the issue of intent

 to sell or deliver a controlled substance is not exhaustive, the absence of any of those

 circumstances is likewise not dispositive. See Yisrael, 255 N.C. App. at 186, 193

 (upholding denial of motion to dismiss where no baggies, scales, written ledgers, or

 other client information were found); State v. Wilson, 269 N.C. App. 648, 655 (2020)

 (upholding the denial of a motion to dismiss where no “cash, other drug

 paraphernalia, or tools of the drug trade—such as scales or additional baggies or

 containers—which have otherwise generally supported a conviction for” possession

 with intent to sell or deliver were presented); Coley, 257 N.C. App. at 789 (upholding

 denial of a motion to dismiss where scales and plastic baggies were discovered but

 only a small amount of marijuana was possessed and no written ledgers or other

 client information was found). Rather, the appropriate inquiry is a case-by-case, fact-
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 specific consideration in which the totality of the circumstances is evaluated in the

 light most favorable to the State and which gives the State the benefit of every

 reasonable inference which can be drawn from the evidence which is produced at

 trial. Golder, 374 N.C. at 249–50; see also Coley, 257 N.C. App. at 788. Thus, our focus

 must be upon the presence of evidence which could reasonably support an inference

 of defendant’s possession of the methamphetamine with the intent to sell or deliver

 and not upon the absence of any hypothetical evidence which could have strengthened

 or added support to the State’s case. See, e.g., Earnhardt, 307 N.C. at 67 (holding that

 reviewing courts “should not be concerned with the weight of the evidence” when

 considering the denial of a motion to dismiss).

 IV. Conclusion

¶ 28 The application of the factors which we employ in the present case, the “totality

 of the circumstances” standard in assessing the evidence presented in this case, and

 the fundamental principles governing the determination of a defendant’s motion to

 dismiss with regard to the sufficiency of the State’s evidence to support the charged

 offense lead us to conclude that the State presented sufficient direct and

 circumstantial evidence of defendant’s intent to sell or deliver methamphetamine so

 as to compel us to affirm the decision of the Court of Appeals which found no error in

 defendant’s trial.

 AFFIRMED.
 STATE V. BLAGG

 2021-NCSC-66

 Opinion of the Court

 Justice BERGER did not participate in the consideration or decision of this

case.
 Justice EARLS dissenting.

¶ 29 The criminal offense of possessing a controlled substance is not the same

 offense as possessing a controlled substance with the intent to sell or deliver it to

 another person (PWISD). Compare N.C.G.S. § 90-95(a)(3) (2019) (making it unlawful

 for any person “[t]o possess a controlled substance”), with N.C.G.S. § 90-95(a)(1)

 (making it unlawful for any person “[t]o manufacture, sell or deliver, or possess with

 intent to manufacture, sell or deliver, a controlled substance” (emphasis added)). The

 Legislature chose to draw this distinction for a reason. This distinction has

 consequences. A defendant convicted under N.C.G.S. § 90-95(a)(1) is guilty of a Class

 C, Class G, or Class H felony, N.C.G.S. § 90-95(b), whereas a defendant convicted

 under N.C.G.S. § 90-95(a)(3) is guilty of a Class I felony or a misdemeanor, either of

 which typically carries a lighter sentence.

¶ 30 In concluding that the State has presented substantial evidence of defendant

 Charles Blagg’s intent to sell or deliver methamphetamine, the majority collapses

 this distinction. In the process, the majority thwarts the Legislature’s effort to tailor

 criminal liability to the nature of a defendant’s alleged criminal conduct. The

 majority’s decision also ensures that Blagg will spend ten to fourteen years in prison,

 having been convicted of a crime for which the evidence was so utterly lacking that

 the charge never should have been presented to the jury. Because the majority

 misinterprets and misapplies the substantial evidence test, I respectfully dissent.
 STATE V. BLAGG

 2021-NCSC-66

 Earls, J., dissenting

 I. Analysis

¶ 31 Every person who possesses any quantity of a controlled substance could

 intend to sell or deliver the drug to another person. At the same time, not every person

 who possesses a controlled substance intends to do anything other than use it for his

 or her own personal consumption. The determinative question in assessing a person’s

 potential criminal liability is the person’s intent. As we have often stated, “[i]ntent is

 a mental attitude seldom provable by direct evidence.” State v. Bell, 285 N.C. 746,

 750 (1974). A defendant’s intent to sell or deliver a controlled substance must instead

 “ordinarily be proved by circumstances from which it may be inferred.” Id. The issue

 is that possessing a controlled substance is, at least in theory, itself a “circumstance[ ]

 from which it may be inferred” that a person intends to sell or deliver a controlled

 substance. If the evidence sufficient to convict a defendant under N.C.G.S. § 90-

 95(a)(3) is always sufficient to convict a defendant under N.C.G.S. § 90-95(a)(1), then

 the Legislature’s carefully drawn demarcation between two different statutory

 provisions is rendered obsolete.

¶ 32 The way we have handled this issue—at least until today—has been to require

 the State to present “substantial evidence” of the defendant’s specific intent to sell or

 deliver the controlled substance he or she possessed. This evidence can be

 circumstantial, certainly, but it cannot merely be evidence common to any individual

 who possesses a controlled substance. Critically, the “substantial evidence” must be
 STATE V. BLAGG

 2021-NCSC-66

 Earls, J., dissenting

 evidence from which the jury could reasonably infer that the defendant intended to

 sell or deliver the controlled substance to another person. See, e.g., State v. Williams,

 307 N.C. 452, 455 (1983). Evidence which is wholly consistent with a defendant’s

 intention to personally consume the substance cannot, standing alone, be substantial

 evidence of the defendant’s intent to sell or deliver it to someone else. If it were

 otherwise, every defendant who possessed a controlled substance could be charged,

 and potentially convicted, under either N.C.G.S. § 90-95(a)(1) or N.C.G.S. § 90-

 95(a)(3), a result which would be at odds with the Legislature’s express intent. See

 Landgraf v. USI Film Prods., 511 U.S. 244, 259 (1994) (“[A] court should give effect

 to every provision of a statute and thus avoid redundancy among different

 provisions.”).

¶ 33 The substantial evidence test does not, as the majority correctly notes, require

 the State to “disprove the possibility that the methamphetamine in defendant’s

 possession was solely for personal use.” But the defendant does not bear the burden

 of disproving the State’s theory of the case, either. It is not enough for the State to

 present evidence which, taken in the light most favorable to the State, establishes

 only that “[w]hile it is possible that [d]efendant had 13 hits of methamphetamine

 solely for personal use, it is also possible that [d]efendant possessed the quantity of

 methamphetamine with the intent to sell or deliver the same.” (Alterations in

 original.) “Substantial evidence” requires “more than a scintilla or a permissible
 STATE V. BLAGG

 2021-NCSC-66

 Earls, J., dissenting

 inference.” Lackey v. N.C. Dep’t of Hum. Res., Div. of Med. Assistance, 306 N.C. 231,

 238 (1982); see also State v. Slaughter, 212 N.C. App. 59, 68 (Hunter, J., dissenting)

 (“[E]vidence which merely shows it possible for the fact in issue to be as alleged, or

 which raises a mere conjecture that it is so, is an insufficient foundation for a verdict

 and should not be left to the jury.” (emphasis added) (quoting State v. Madden, 212

 N.C. 56, 60 (1937))), rev’d per curiam for reasons stated in dissent, 365 N.C. 321

 (2011). It is obviously “possible” that Blagg intended to sell or deliver the

 methamphetamine he possessed to another person. Indeed, it is hard to imagine a

 circumstance where it would be “impossible” for a court to infer that a person

 apprehended while possessing some quantity of a controlled substance intended to

 sell or deliver it to another person. That is why we have always required substantial

 evidence of the defendant’s specific intent to sell or deliver the controlled substance

 before allowing the case to proceed to the jury.

¶ 34 In this case, the evidence that Blagg intended to sell or deliver

 methamphetamine to another person just does not exist. Here are the facts actually

 established at trial: Blagg went to the home of a suspected drug dealer. He spent

 “approximately ten minutes” inside. As he was driving away from the home, he was

 pulled over for a moving violation. A K-9 officer noted the presence of narcotics near

 Blagg’s vehicle. A (human) officer searched the vehicle and found plastic bags

 containing what proved to be 6.51 grams of methamphetamine and 1.5 grams of an
 STATE V. BLAGG

 2021-NCSC-66

 Earls, J., dissenting

 untested white crystalline substance. The officers also found syringes, cotton balls,

 an untested substance that resembled marijuana, and a small safe containing used

 marijuana blunts and a number of plastic baggies, all scattered about the vehicle.

 After he was arrested, Blagg told the officers he could help them track down “a female

 who was wanted for trafficking heroin or something of that nature.”

¶ 35 People who personally consume methamphetamine obtain it from somewhere.

 Blagg’s presence at a residence where drug dealing was suspected of occurring—and

 his apparent knowledge of who in his community is dealing drugs—suggests only that

 Blagg knows where and how to purchase methamphetamine, not that he is himself a

 drug dealer. Testimony established that methamphetamine is typically sold in plastic

 baggies. It follows as a matter of logic that the manner in which a product is typically

 sold is also the manner in which it is typically purchased. The fact that Blagg had

 some number of plastic baggies in his vehicle says nothing about why he obtained

 methamphetamine.1 Testimony also established that cotton balls and syringes are

 used for injecting methamphetamine. This says nothing about who the intended user

 of the methamphetamine is. And individuals who possess controlled substances for

 any reason have good reason to conceal their stash. The point is not that the evidence

 1 If a person were observed at a store purchasing a gallon of milk and then some empty

 milk containers were found in that person’s car, would that be substantial evidence that the
 person is selling or delivering milk to other people? Or would the empty milk containers be
 evidence that the person likes to drink milk?
 STATE V. BLAGG

 2021-NCSC-66

 Earls, J., dissenting

 in the record excludes the possibility that Blagg intended to sell or deliver

 methamphetamine to another person. The point is that substantial evidence requires

 more than a mere possibility that something could, maybe, conceivably be true.

¶ 36 Everything the majority relies upon beyond the evidence described above—

 such as its assertion that “the amount of methamphetamine at issue here is greater

 than the amount of the substance that the trial evidence associates with possession

 for one’s personal use”—is pure speculation. Worse, it is exactly the same speculative

 reasoning that the trial court explicitly prohibited the State from engaging in during

 the sole portion of a criminal proceeding where factfinding is typically permitted, the

 trial. What a given quantity of a controlled substance found in a person’s possession

 reveals about that person’s intent is “a matter familiar only to those who regularly

 use or deal in the substance[ or] who are engaged in enforcing the laws against it,”

 not an inference a jury can draw based upon its own “general knowledge and

 experience.” State v. Mitchell, 336 N.C. 22, 30 (1994), abrogated on other grounds by

 State v. Rogers, 371 N.C. 397 (2018). The trial court did not permit the State to argue

 that the amount of methamphetamine found in Blagg’s vehicle signified his intent to

 sell or deliver it because there was “no evidence as to [the amount of

 methamphetamine being] more than [for] personal use. Absolutely none. [The State]

 never elicited that testimony from the officer. . . . There was no testimony as to that.

 None.” Apparently, on this matter, the majority knows better than the trial court,
 STATE V. BLAGG

 2021-NCSC-66

 Earls, J., dissenting

 even though there is “[a]bsolutely no[ ]” evidence in the record telling us what

 possessing 6.51 grams of methamphetamine implies. We may not always like the

 facts as established by the trial court but, as appellate jurists, we are not at liberty

 to find our own. Desmond v. News & Observer Publ’g Co., 375 N.C. 21, 44 n.16 (“Were

 we to . . . make our own factual determinations on the evidence . . . we would

 impermissibly invade the province of the jury . . . .”), reh’g denied, 376 N.C. 535 (2020).

¶ 37 Lacking what is typically required to support a legal inference drawn from the

 quantity of methamphetamine at issue—evidence in the record—the majority casts

 about for something else. It lands on math. According to the majority, 6.51 grams is

 both “more than six times, and up to 13 times, the amount of methamphetamine

 typically purchased” and “23.3% of the threshold amount of trafficking in

 methamphetamine.” This calculation is not substantial evidence of PWISD. The only

 evidence in the record supporting the first half of the equation is Detective Maxwell’s

 testimony that “[u]sually a seller will individually package [methamphetamine] . . .

 in anywhere from half a gram to one gram.” His testimony does nothing to establish

 how much or how many packages an individual user of methamphetamine might

 typically purchase for personal consumption in a single transaction. Nor does

 Maxwell’s testimony include any statement supporting the majority’s unfounded

 conclusion that “a typical methamphetamine sale for personal drug use [i]s usually

 between one-half of a gram to a gram.” (Emphasis added.) His testimony solely
 STATE V. BLAGG

 2021-NCSC-66

 Earls, J., dissenting

 addresses how a seller typically packages methamphetamine, not a buyer’s

 purchasing habits or preferences. Regardless, Maxwell explicitly qualified his

 statement by noting that a seller might package methamphetamine in different

 quantities “depending on what the buyer is wanting.”

¶ 38 Further, the majority’s reliance on the trafficking threshold amount as proof

 of Blagg’s intent is an unjustified stretch of our precedents. The very purpose of a

 threshold amount is to establish the point beyond which the amount possessed

 becomes legally salient. Although we have previously described the quantity of a

 controlled substance in a defendant’s possession in relation to the trafficking

 threshold amount, in that case, the amount considered “more than an individual

 would possess for his personal consumption” and relevant to the defendant’s intent

 to sell or deliver was over two-thirds the amount required to support a conviction for

 trafficking. Williams, 307 N.C. at 457. The majority does not explain why 23.3% of

 the trafficking threshold amount is substantial enough to support a PWISD

 conviction. Without an explanation, there is no way to predict whether possessing

 15% of the threshold quantity, or 5% of the threshold quantity, would be indicative of

 a defendant’s intent to sell or deliver a controlled substance. The majority’s reasoning

 leaves defendants and lower courts to guess the point beyond which possessing a

 quantity of a controlled substance less than the statutory threshold amount

 heightens a defendant’s potential criminal liability.
 STATE V. BLAGG

 2021-NCSC-66

 Earls, J., dissenting

¶ 39 The State presented no testimony or evidence regarding how much

 methamphetamine an individual user typically consumes in a single sitting, the

 number of doses a single purchase typically covers, or how frequently a regular

 consumer of methamphetamine purchases and uses the drug. Absent any of this

 necessary context, the fact that Blagg possessed 6.51 grams of methamphetamine is

 meaningless, beyond establishing that Blagg possessed methamphetamine in a

 quantity insufficient to sustain a trafficking charge.

¶ 40 The majority’s rejoinder is that while the quantity of methamphetamine Blagg

 possessed is “not dispositive,” it is still evidence of Blagg’s intent to sell or deliver

 methamphetamine “in combination with the totality of the circumstances,” at least

 when viewed in the light most favorable to the State. Again, those circumstances do

 nothing to distinguish Blagg from any other individual who purchases

 methamphetamine exclusively for personal consumption. As the majority

 acknowledges, “items such as guns, cutting agents, scales, business ledgers, books,

 notes, money orders, financial records, documents, and suspicious cellular telephone

 entries which are often associated with dealers of illegal drugs were not found by law

 enforcement officers in the course of the search.”

¶ 41 The majority then goes on to cite various cases in which this Court or the Court

 of Appeals concluded that the State had presented substantial evidence of a

 defendant’s intent to sell or deliver in purportedly similar circumstances as presented
 STATE V. BLAGG

 2021-NCSC-66

 Earls, J., dissenting

 here. Yet in each of those cases, the record disclosed that the defendant had been

 found with or done something unusual for a person solely intending to personally

 consume the controlled substance. The defendant in Yisrael “was carrying a large

 amount of cash ($1,504.00) on his person” in small denominations when he was

 apprehended “on the grounds of a high school while possessing illegal drugs” with a

 stolen and loaded handgun inside his vehicle. State v. Yisrael, 255 N.C. App. 184, 190

 (2017). The defendant in Wilson “attempted to hide the larger amount of cocaine while

 leaving the smaller corner bag—associated with only personal use—in plain view.”

 State v. Wilson, 269 N.C. App. 648, 655, review denied, 376 N.C. 532 (2020). The

 defendant in Coley was found with marijuana, “a digital scale[,] and an open box of

 sandwich bags.” State v. Coley, 257 N.C. App. 780, 789 (2018). The defendant in

 Williams was in constructive possession of a residence where drug sales were proven

 to have occurred, Williams, 307 N.C. at 456, and his fingerprints were found on one

 of many “tinfoil squares, a material frequently used to package heroin for sale,” found

 inside, id. at 457. Invoking the totality of the circumstances is no substitute for the

 State’s burden to present substantial evidence of Blagg’s intent to sell or deliver

 methamphetamine. The cases relied upon by the majority all included additional

 facts inconsistent with possession merely for personal use.

¶ 42 Perhaps anticipating the harsh consequences of its gloss on the substantial

 evidence test, the majority emphasizes that it is not the ultimate arbiter of Blagg’s
 STATE V. BLAGG

 2021-NCSC-66

 Earls, J., dissenting

 guilt. The majority explains that it finds “the trial court’s adherence to the principle

 . . . to submit issues to the jury in borderline or close cases to be both prudent and

 proper.” Yet our responsibility for ensuring fair and equal application of the law in

 all cases is not discharged by references to the role of the jury as factfinder. It requires

 us to consistently apply the law as enacted by the Legislature and interpreted though

 our precedents.

¶ 43 Finally, the majority’s analysis does not clearly identify the basis for its

 holding. According to the majority, “[j]ust as any list of circumstances frequently

 considered on the issue of intent to sell or deliver a controlled substance is not

 exhaustive, the absence of any of those circumstances is likewise not dispositive.”

 What the majority appears to be saying is that even if prior cases have enumerated

 factors determined to be indicative of a defendant’s intent to sell or deliver a

 controlled substance, when confronted with a case in which none of those factors are

 present, a court may choose to redefine the test to include new factors. This manner

 of deciding cases is out of step with our traditional respect for precedent.

 The doctrine of stare decisis, commonly called the “doctrine
 of precedents,” has been firmly established in the law . . . .
 It means that we should adhere to decided cases and
 settled principles, and not disturb matters which have been
 established by judicial determination. The precedent thus
 made should serve as a rule for future guidance in deciding
 anal[o]gous cases . . . . This is not only a sensible, but a just,
 principle, and a contrary rule would manifestly be
 inequitable. . . . We have repeatedly said that the
 weightiest reasons make it the duty of the court to adhere
 STATE V. BLAGG

 2021-NCSC-66

 Earls, J., dissenting

 to its decisions.

 Hill v. Atl. & N.C. R.R. Co., 143 N.C. 539, 573–75 (1906). As we have long recognized,

 judicial inconstancy comes at a cost to litigants and to our institutional legitimacy.

¶ 44 Because the majority’s decision lends the erroneous impression that any time

 a defendant is charged with possession of a controlled substance pursuant to N.C.G.S.

 § 90-95(a)(3), there is substantial evidence that the defendant possessed the

 substance with the intent to sell or deliver it to another person within the meaning

 of N.C.G.S. § 90-95(a)(1), I respectfully dissent.

 Justice HUDSON joins in this dissenting opinion.